1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | | |
|---|---|---|
| MANUEL ARREOLA, | ) | No.  C 11-02843 EJD (PR) |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING MOTION FOR |
| v. | ) | SUMMARY JUDGMENT; DENYING |
| | ) | MOTION FOR LEAVE TO FILE |
| | ) | ADDITIONAL PLEADING |
| DR. JOHN HENRY, | ) | |
| Defendant. | ) | |
| _____ | ) | (Docket Nos. 94 & 104) |

18
19
20
21
22
23
24
25

Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed a pro se civil rights complaint under 42 U.S.C. § 1983, challenging the conditions of his confinement. The only remaining issue in this action is whether Defendant Dr. Henry acted with deliberate indifference with respect to Plaintiff's post-operative treatment in violation of the Eighth Amendment.[1]  Defendant Dr. Henry has filed a motion for summary judgment. (Docket No. 71.)  Plaintiff filed opposition and Defendant filed a reply.  Plaintiff then filed a motion for leave to file an additional response along with the proposed brief, (Docket Nos. 104 and 105), which is DENIED for failing to conform with Northern

26
27
28

---

[1] The Court granted Defendant Dr. Bright's motion for summary judgment on March 6, 2013. (Docket No. 87.)  The Court partially granted Dr. Henry's motion to dismiss on July 31, 2013, and dismissed Plaintiff's claims involving Dr. Henry's diagnosis and surgery.  (Docket No. 93.)

1  District of California  Local Rule 7-3(d).[2]

2

3                                **DISCUSSION**

4  **I.    Statement of Facts**

5          The following facts are undisputed unless otherwise indicated.  On June 22, 2009,

6  Dr. Henry admitted Plaintiff to Twin Cities Community Hospital (the "Hospital") for

7  treatment of an incisional hernia which involved an area between his umbilicus and

8  bottom of the sternum.  Dr. Henry performed the surgery on the same day, and repaired

9  the hernia with the use of Bard mesh.  According to Plaintiff, he informed Dr. Henry after

10  the surgery that he was experiencing increasing pain in his abdomen, Dr. Henry stated

11  that it was probably due to constipation.  Plaintiff was transferred back to CTF Prison in

12  Soledad on June 25, 2009.

13          According to Dr. Henry's declaration, a copy of his transfer summary was faxed to

14  the CTF medical staff the same day that he was transferred.  The summary included the

15  following: (1) Dr. Bright was to evaluate the patient and possibly either keep him in a

16  short stay medical unit for a day or two or send him back to his usual housing; (2) regular

17  diet; (3) "[h]ave the yard registered nurse, every other day, change his dressing and in

18  three or four days, he can take a shower, but change the dressing after the shower. In a

19  week, remove every other skin suture and four or five days later, take them all out"; (4)

20  resume all usual medications and inhalers; (5) "[p]ain control is going to be a problem...

21  he may need more, but ultimately he needs to be tapered off of this dose and/or be

22  evaluated by a pain physician to see what the etiology of his pain is"; (6) Milk of

23

24         [2]Defendant also asserts that Plaintiff's opposition was untimely filed and should

25  therefore be disregarded by the Court.  (Docket No. 106.)  The Court notes that Plaintiff's
    signature on the opposition is dated November 20, 2013.  (Docket No. 102 at 7.)

26  Assuming that this was the same day that he delivered the document to the prison
    authorities for mailing, the Court deems the opposition timely filed by the due date of

27  November 21, 2013.

28

1  Magnesia as needed for constipation, which will be a problem with all of Plaintiff's

2  narcotics; (7) to call John G. Henry, MD, surgeon at 805-434-1874 or pager 805-461-

3  4761 or home, nights and weekends, 805-434-1720 as needed with questions or problems,

4  and before calling 911; (8) to cal Nurse Jimenez at CtF and make a surgery clinic

5  appointment at the prison for two or three weeks.  (Henry Decl. at ¶ 7.)

6      Soon after being discharged from the Hospital, Plaintiff began to experience

7  "increasing throbbing pain" in his abdomen, as well as fevers and persistent nausea and

8  vomiting.  (Compl. at ¶ 14.)  Plaintiff claims that he had difficulty breathing and felt an

9  "intense pressure building up" in his stomach.  (Id.)  By June 30, 2009, Plaintiff claims

10  that his abdomen "was swelling and a foul brown smelling pus started coming from the

11  wound."  (Id., at ¶¶ 20-21.)  According to Dr. Henry's notes, Dr. Bright called Dr. Henry

12  at the Hospital about Plaintiff's condition.  (Kanter Decl., Ex. A at 124.)  The next day,

13  Plaintiff was transported to the Hospital.

14      Plaintiff was admitted on July 1, 2009, by Dr. Berry Foran as Dr. Henry was on

15  vacation.  According to Dr. Foran's "progress notes," Plaintiff appeared to have a

16  "superficial wound infection" and would be treated with antibiotics, IV fluids, and pain

17  medication.  (Kanter Decl., Ex. A at 126-27, 142, original pagination.[3])  Thereafter, Dr.

18  Foran continued to treat Plaintiff on a daily basis and made progress notes through July 5,

19  2009.  (Id. at 142-144.)

20      Nursing notes on July 4, 2009, state the following: "Abdominal dressing changed.

21  Stitches intact.  No redness or swelling."  (Kanter Decl., Ex. A at 177.)  Nursing notes on

22  July 5, 2009, include the following: "initial assessment completed... dressing on

23  abd[omen] intact.  No complaint of pain or discomfort."  (Id. at 179.)  Then on July 6,

24  2009, a nurse noted "abdomen dry and intact."  (Id. at 180.)

25      On July 6, 2009, Dr. Henry returned from vacation and resumed Plaintiff's

26

27  ───────────────

28  [3]All future references to Exhibit A of the Kanter Declaration are to the original
   pagination.

treatment.  He saw Plaintiff on the same day, and wrote orders to increase FiberCon, for Milk of Magensia to treat constipation, approval for the patient to shower, to change the dressing every morning, and to allow him to walk in the back hall four times a day.  (Kanter Decl., Ex. A at 136.)  Later that day, Dr. Henry made progress notes stating the following: "Small wound abscess secondary to incisional hernia repair nine days prior to readmission on July 1, 2009.  Abscess at lower end of incision broke and drained.  Wound culture showed light growth of E-coli and strep viridans.  White blood cell count 9.0 with left shift.  Started on IV Levaquin and Flagyl.  Wound drainage decreased every day.  Afebrile entire hospitalization.  After sensitivity came back, antibiotics changed to oral Septra and Doxycycline.  Patient is looking forward to going back to CTF in a few days.  Home when drainage totally stops."  (Id. at 144.)  Later that day, Dr. Henry also updated Plaintiff's prescriptions, including antibiotics and narcotics for pain, and ordered a blood count, urinalysis and Chem-20.  (Id. at 136.)

Dr. Henry's notes from the following morning on July 7, 2009, state the following: "'pain' in spite of MS Contin 30 mg by mouth twice a day" and "wound spot by pubis still purulent drainage"; "If no improvement of lower corner wound, may take [Plaintiff] back to OR (operating room) and debride wound under anes[thesia]"; Still no BM (bowel movement) in spite of MOM (Milk of Magnesia) - will increase to citrate of magnesia"; [Plaintiff] is prob[ably] 'drug seeker.'"  (Id. at 145.)  Dr. Henry promptly increased Plaintiff's pain medication, and prescribed citrate of magnesia.  (Id.)  The nursing notes stated that the increased narcotics had a "good effect."  (Id. at 182.)  Later that afternoon, Dr. Henry noted that "Dressing changed by pubis.  Only small amount of serum in dressing.  Will possibly not debride resolving wound.  Will reassess in morning."  (Id.)

The next morning on July 8, 2009, Dr. Henry made the following notes: "Wound cleaning up more than yesterday.  Pain under control.  Am trying to find CTF MD... Will try to get [Plaintiff] back today or tomorrow."  (Id.)  Later that day, Dr. Henry dictated a transfer note, indicating that Plaintiff was to be discharged and transferred back to the prison with the approval of Dr. Bright, the doctor at CTF.  (Id.)  The nursing notes state

1   that "assessment complete, [Plaintiff] denies pain or problems at this time." (Id. at 184.)

2   Dr. Henry entered orders for Plaintiff's pain medication and the transfer later that day.

3   (Id. at 138.)

4       Dr. Henry's discharge diagnosis was that Plaintiff had a "resolving superficial

5   infection" nine days after his hernia surgery. (Henry Decl., ¶ 19; Kanter Decl., Ex. A at

6   124-25.) He also stated the following: "What looked like an abscess on its own within

7   the first few hours in the hospital broke and then the wound is surprisingly, over the past

8   few days, really cleaned up well. I always worry about the mesh being infected, but a

9   small amount of cellulitis and abscess was just by the skin and not involving the mesh. At

10  the time of discharge, the patient's wound is clearing up nicely." (Henry Decl. ¶ 7;

11  Kanter Decl., Ex. A at 124.) Dr. Henry's recommendations to the prison officials

12  included the following: (1) to resume all usual medications, inhalers and pain medicines;

13  (2) usual housing; (3) usual diet; (4) have the nurse see Plaintiff daily and change

14  dressing, cleaning with peroxide as necessary; (5) antibiotic prescriptions, Milk of

15  Magnesia, and vitamin supplements; (6) "Call me John G. Henry, MD, surgeon at 805-

16  434-1874 or pager 805-461-4761 or home nights or weekends at 805-434-1720. Call me

17  before you call 911"; and (9) to call Nurse Jimenez at CTF extension 4869 and make a

18  surgery clinic appointment to see Dr. Henry in the next 1 or 2 weeks. ( Kanter Decl., Ex.

19  A at 125.)

20      Plaintiff claims that his health was deteriorating and he was losing a substantial

21  amount of weight. (Compl. at ¶ 28.) Furthermore, it was painful to walk and whenever

22  Plaintiff stood up, his dressing would soak up and fall from the wound. (Id.) Plaintiff

23  claims that Dr. Henry ignored the problem although Plaintiff continued to bring it to his

24  attention. (Id.) Plaintiff claims that he was later diagnosed by different physicians with

25  "multiple intra-abdominal abscesses" and an "enterocutaneous fistula" that required

26  another surgery. (Id., at ¶ 40.) Plaintiff claims that Dr. Henry's post-operative treatment

27  amounted to deliberate indifference to his serious medical needs in violation of the Eighth

28  Amendment.

1

**II.**     **Summary Judgment**

2      Summary judgment is proper where the pleadings, discovery and affidavits show

3  that there is "no genuine dispute as to any material fact and the movant is entitled to

4  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary

5  judgment "against a party who fails to make a showing sufficient to establish the

6  existence of an element essential to that party's case, and on which that party will bear the

7  burden of proof at trial . . . since a complete failure of proof concerning an essential

8  element of the nonmoving party's case necessarily renders all other facts immaterial."

9  Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might

10  affect the outcome of the lawsuit under governing law, and a dispute about such a

11  material fact is genuine "if the evidence is such that a reasonable jury could return a

12  verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13  (1986).

14      Generally, the moving party bears the initial burden of identifying those portions

15  of the record which demonstrate the absence of a genuine issue of material fact.  See

16  Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on

17  an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could

18  find other than for the moving party.  But on an issue for which the opposing party will

19  have the burden of proof at trial, the moving party need only point out "that there is an

20  absence of evidence to support the nonmoving party's case."  Id. at 325.  If the evidence

21  in opposition to the motion is merely colorable, or is not significantly probative, summary

22  judgment may be granted.  See Liberty Lobby, 477 U.S. at 249-50.

23      The burden then shifts to the nonmoving party to "go beyond the pleadings and by

24  her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

25  file,' designate specific facts showing that there is a genuine issue for trial.'"  Celotex

26  Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this

27  showing, "the moving party is entitled to judgment as a matter of law."  Id. at 323.

28      The Court's function on a summary judgment motion is not to make credibility

1    determinations or weigh conflicting evidence with respect to a material fact.  See T.W.

2    Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

3    The evidence must be viewed in the light most favorable to the nonmoving party, and the

4    inferences to be drawn from the facts must be viewed in a light most favorable to the

5    nonmoving party.  See id. at 631.  It is not the task of the district court to scour the record

6    in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir.

7    1996).  The nonmoving party has the burden of identifying with reasonable particularity

8    the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so,

9    the district court may properly grant summary judgment in favor of the moving party.

10   See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-

11   29 (9th Cir. 2001).

12       **A.    Deliberate Indifference**

13       Deliberate indifference to a prisoner's serious medical needs violates the Eighth

14   Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prison official violates the

15   Eighth Amendment only when two requirements are met: (1) the deprivation alleged is,

16   objectively, sufficiently serious, and (2) the official is, subjectively, deliberately

17   indifferent to the inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 834

18   (1994).

19       A "serious" medical need exists if the failure to treat a prisoner's condition could

20   result in further significant injury or the "unnecessary and wanton infliction of pain."  Id.

21   The following are examples of indications that a prisoner has a "serious" need for medical

22   treatment: the existence of an injury that a reasonable doctor or patient would find

23   important and worthy of comment or treatment; the presence of a medical condition that

24   significantly affects an individual's daily activities; or the existence of chronic and

25   substantial pain.  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled

26   on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

27   1997) (en banc).

28       A prison official exhibits deliberate indifference when he knows of and disregards

a substantial risk of serious harm to inmate health.  See Farmer, 511 U.S. at 837.  The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference.  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).  In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff's claim that Dr. Henry ignored his deteriorating health after the surgery is not supported by the evidence.  When Plaintiff complained of and exhibited serious symptoms after the surgery, Dr. Bright consulted with Dr. Henry before transferring him back to the Hospital on July 1, 2009.  See supra at 3.  Plaintiff has failed to present evidence indicating that Dr. Henry was aware of Plaintiff's condition any sooner than this date.  While Dr. Henry was away on vacation from July 1 through July 5, 2009, Dr. Foran treated Plaintiff.  Plaintiff asserts in his opposition that Dr. Henry was still responsible for

his care during this time because Dr. Henry was allegedly instructing Dr. Foran about Plaintiff's care "thru faxes." (Opp. at 7.) Be that as it may, there is no indication that the care that Dr. Foran provided during this time was constitutionally deficient. Dr. Foran's initial diagnosis was a "superficial wound infection." Id. at 3. His treatment included antibiotics, IV fluids, and pain medication. The treatment was effective as Dr. Foran notes on July 2, 2009, that the wound was draining, Plaintiff had decreased pain, and the x-ray was normal. (Kanter Decl., Ex. A at 143.) By July 4, 2009, the wound was clearing up. (Id.) By the next day, Dr. Foran noted "No change, tolerating diet, scant drainage present." (Id.) As Plaintiff's condition was improving under his treatment, it cannot be said that Dr. Foran was acting with deliberate indifference by disregarding a substantial risk of serious harm to Plaintiff's health.

Once Dr. Henry returned from vacation, he treated Plaintiff from July 6 through July 8, 2009. Assuming that Plaintiff had a serious medical condition during this time, there is no indication that Dr. Henry acted with deliberate indifference to Plaintiff's medical needs, *i.e.*, that he knew of and disregarded a substantial risk of serious harm to Plaintiff's health. See Farmer, 511 U.S. at 837. Rather, Dr. Henry saw Plaintiff on the first day of his return from vacation and noted that Plaintiff had a "small wound abscess" which was draining daily. See supra at 3. He also noted that "pain and behavior under control." See supra at 4. Dr. Henry updated prescription orders in the morning and afternoon, including ordering tests. Id. When Dr. Henry saw Plaintiff again the next day and received complaints of "pain," he immediately addressed it by adjusting his pain medication. Id. Dr. Henry also noted the possibility of taking Plaintiff back to surgery to "debride the wound,"; and after checking on the wound later in the day, Dr. Henry believed surgery would not be necessary but would reassess in the morning. Id. On July 8, 2009, Dr. Henry's final assessment was that the wound had cleaned up more than the day before, and that Plaintiff's pain was under control. Id. Dr. Henry sought approval from Dr. Bright before ordering Plaintiff's transfer back to prison the same day. Id. at 4-5. The nursing notes are consistent with Dr. Henry's observations, and indicate that his

1  prescribed care was affective.  Id. at 4-5.  This evidence clearly shows that Dr. Henry

2  closely monitored Plaintiff's condition and provided appropriate treatment by ordering

3  necessary medication and making reasonable medical decisions.

4      Furthermore, when Dr. Henry discharged Plaintiff on July 8, 2009, he noted that

5  the Plaintiff's wound was "clearing up nicely" and that his pain was "under control."  See

6  supra at 4.  According to the nursing notes from that day, Plaintiff "denie[d] pain or

7  problems."  Id.  Dr. Henry also made specific recommendations to the CTF medical

8  officials with respect to Plaintiff's care upon his return to prison.  Id. at 5.  Based on this

9  evidence, Plaintiff has failed to show that Dr. Henry knew of a substantial risk to

10  Plaintiff's health, and disregarded that risk by failing to take reasonable steps to abate it.

11  Farmer, 511 U.S. at 837.

12      In opposition, Plaintiff generally attacks the diagnosis of his condition and asserts

13  that Dr. Henry should have been aware of the more serious nature of his condition.  For

14  example, he asserts that he obviously still had puss coming from his wound which Dr.

15  Henry and the nurses disregarded.[4]  However, Plaintiff must show that Dr. Henry not only

16  knew of "facts from which the inference could be drawn" that an excessive risk of harm

17  exists, but that Dr. Henry actually drew that inference.  See Farmer, 511 U.S. at 837.  The

18  evidence indicates that Dr. Henry was not aware of any serious risk to Plaintiff's health

19  when he discharged Plaintiff from the Hospital: the wound had healed significantly by

20  then, and had drained sufficiently such that a second surgery was not necessary; Plaintiff

21  was not complaining of pain and had no other symptoms to cause Dr. Henry to believe a

22  transfer back to prison was not appropriate.  Furthermore, to the extent that Plaintiff is

23  asserting that Dr. Henry's course of treatment was medically unacceptable under the

24  circumstances, Plaintiff has failed to show that Dr. Henry chose this particular course in

25

26      [4]In support of his opposition, Plaintiff attached numerous medical records with little
    reference thereto in his brief.  As Defendant points out, these records are also unauthenticated
27  and Plaintiff attempts to include inadmissible hearsay evidence to support his claim that
    Defendant provided constitutionally inadequate care.  Accordingly, the Court will not consider
28  this evidence in considering Defendant's motion.

conscious disregard of an excessive risk to Plaintiff's health. <u>Toguchi</u>, 391 F.3d at 1058.

As discussed above, there is no indication that Dr. Henry was aware of any such

excessive risk.

At most, Plaintiff may state a claim of medical malpractice or gross negligence,

but such claims are insufficient to make out a violation of the Eighth Amendment. <u>See</u>

<u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060-61 (9th Cir. 2004); <u>Hallett v. Morgan</u>, 296 F.3d

732, 744 (9th Cir. 2002); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981);

<u>McGuckin</u>, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical

condition, without more, does not violate a prisoner's 8th Amendment rights).

Accordingly, it cannot be said that Dr. Henry violated the Eighth Amendment in his

treatment of Plaintiff. <u>See</u> <u>Gibson</u>, 290 F.3d at 1188.


**CONCLUSION**

For the reasons stated above, Defendant Dr. Henry's motion for summary

judgment, (Docket No. 94), is GRANTED.[5]  The claims against him are DISMISSED

with prejudice.

This order terminates Docket Nos. 94 and 104.


DATED: _____9/9/2014_____                    _____
                                                EDWARD J. DAVILA
                                                United States District Judge

---

   [5] Because the Court finds that no constitutional violation occurred, it is not necessary
to reach Defendants' qualified immunity argument.

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

MANUEL ARREOLA,

                Plaintiff,

  v.

DR. JOHN HENRY,

                Defendant.

_____/

Case Number: CV11-02843 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9/9/2014_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Manuel Arreola
3208 Cambridge Dr.,
Chino Hills, CA 91709

Dated: _____9/9/2014_____

                        Richard W. Wieking, Clerk
               /s/ By: Elizabeth Garcia, Deputy Clerk